IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
ARTHUR ROBERTS, JR.,          )
                              )
    Plaintiff,                )
                              )
                              )       CIVIL ACTION NO.
    v.                        )        2:13cv335-MHT
                              )            (WO)
STATE OF ALABAMA DEPARTMENT   )
OF YOUTH SERVICES and         )
GEORGE McCREE, in his         )
individual capacity,          )
                              )
    Defendants.               )
```

OPINION AND ORDER

Plaintiff Arthur Roberts, Jr., charges in this lawsuit that defendants Alabama Department of Youth Services (his former employer) and George McCree (his former supervisor) retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and discriminated against him because of religion in violation of the Fourteenth Amendment, as enforced through 42 U.S.C. § 1983.[*] Jurisdiction is proper under

___

    [*]The amended complaint addressed in this opinion was submitted by Roberts after the court ordered him to
(continued...)

28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

This cause is now before the court on the Youth Services Department and McCree's motion to dismiss. The motion will be granted in part and denied in part, and a ruling will be reserved in part.

I.

In considering a defendant's motion to dismiss, the court accepts the plaintiff's allegations as true, Hishon v. King & Spalding, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint need not contain

---

(...continued)
clarify his claims and denied the Youth Services Department and McCree's motion to dismiss the original complaint with leave to renew.

2

"detailed factual allegations," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007), "only enough facts to state a claim to relief that is plausible on its face." Id. at 574.

## II.

Roberts worked as a security officer at the Youth Services Department starting in November 2011. He alleges that, because he also serves as a pastor, he was harassed and made subject to unequal terms of employment (in numerous ways) at the hands of his supervisor, McCree. Roberts alleges that, when he submitted a discrimination charge with the Equal Employment Opportunity Commission (EEOC), McCree heard about it and moved him to a night shift. A few weeks later, Roberts's name was removed from the duty roster altogether. McCree then gave Roberts the option to be terminated or to resign, and Roberts opted for the latter.

During a hearing on July 26, 2013, the court heard argument from the parties on Roberts's two claims, each of

which names both McCree and the Youth Services Department as defendants. The court said it would dismiss Roberts's Title VII retaliation claim as against McCree in his official capacity, since it was redundant with naming the Youth Services Department as a defendant. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in her or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). The court also said it would dismiss Roberts's religious-discrimination claim brought under § 1983 as against the Youth Services Department, since the Eleventh Amendment bars claims against a state agency. See Pennhurt State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984) ("[A] suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

The court will allow Roberts's retaliation claim as against the Youth Services Department to go forward. "A

4

plaintiff may establish a prima facie case of retaliation by showing: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal relationship between the two events." Patel v. Georgia Dept. BHDD, 485 F. App'x 982, 983 (11th Cir. 2012). Here, Roberts, alleges that he filed a charge with the EEOC and that he was ultimately forced to resign as a result. Moreover, McCree's knowledge that Roberts had filed an EEOC charge, combined with the close temporal proximity of the chain of actions that culminated in Roberts's resignation, could suggest causation. See, e.g., Brungart v. BellSouth Telecommunications, Inc., 231 F.3d 791, 799 (11th Cir. 2000) (explaining that a decisionmaker's knowledge of a protected activity and close temporal proximity between the protected activity and the adverse employment action constitute circumstantial evidence of causation).

The court reserves ruling on Roberts's religious-discrimination claim as against McCree in his individual capacity. While, during the hearing, the court

suggested that this claim would go forward, upon further reflection the court is still confused about the basis for this claim.  In the amended complant, Roberts avers that, because he is an ordained minister, he volunteered to assist the chaplain at the Youth Services Department and that (impliedly as a result) McCree "would subject him to derogatory and disparaing comments about his religious activities."  Am. Compl. (Doc. No. 19) ¶ 10.  However, Roberts never specifies what these comments were or how often they occurred.  Roberts also alleges that McCree repeatedly victimized him at work, causing Roberts to suffer numerous professional disadvantages, and ultimately forced him to resign.  But it is unclear whether Roberts alleges that he was actually forced to resign because of his religion or whether he was forced to resign because of retaliation alone.  It is also not clear whether the laundry list of other disadvantages that Roberts says he suffered at the hands of McCree were because of Roberts's religion. During the hearing, Roberts's attorney explained that McCree had explicitly make remarks about Roberts's

faith and expressed his intention to "put a stop to this"; the court could not tell whether this "put a stop to this" statement was meant to imply that Roberts was fired because of his religion, that McCree attempted to stop Roberts from practicing his religion, or something else.  Regardless, this information is not in the Amended Complaint, and the court therefore cannot rely on it.

The court will therefore allow Roberts to amend his complaint once more: (a) setting out the theory or theories upon which he bases his religious-discrimination claim (for instance, whether the claim is based on hostile-work environment, discriminatory termination, both, or on some other theory) and (b), for each theory, setting forth the specific facts that support it.  Roberts is particularly directed to take note that generalizations, conclusory allegations, blanket statements, and implications will not be sufficient to allow this claim to go forward.  Roberts must truly connect the dots, alleging precisely how the specific actions undertaken by McCree support each theory of religious discrimination.  The court emphasizes that

7

this is Roberts's last chance to amend his complaint.

\* \* \*

Accordingly, it is ORDERED as follows:

(1) Defendants Department of Youth Services and George McCree's motion to dismiss (doc. no. 27) is granted as to plaintiff Arthur Roberts, Jr.,'s Title VII retaliation claim against defendant McCree in his official capacity and his § 1983 religious-discrimination claim against defendant Department of Youth Services.  Plaintiff Roberts complaint is dismissed to this extent.

(2) Defendants Department of Youth Services and McCree's motion to dismiss (doc. no. 27) is denied to plaintiff Roberts's Title VII retaliation claim against Department of Youth Services.  This claim will go forward.

(3) Plaintiff Roberts is allowed until August 15, 2013, to amend his complaint in the following respects: (a) setting out the theory or theories upon which he bases his religious-discrimination claim (for instance, whether the claim is based on hostile-work environment, discriminatory

8

termination, both, or on some other theory) and (b), for each theory, setting forth the specific facts that support it. Plaintiff Roberts is particularly directed to take note that generalizations, conclusory allegations, blanket statements, and implications will not be sufficient to allow this claim to go forward.  Plaintiff Roberts must truly connect the dots, alleging precisely how the specific actions undertaken by McCree support each theory of religious discrimination.  The court emphasizes that this is plaintiff Roberts's last chance to amend his complaint. The court reserves ruling on defendants Department of Youth Services and McCree's motion to dismiss (doc. no. I7) to this extent.

    DONE, this the 9th day of August, 2013.

                                 /s/ Myron H. Thompson
                              **UNITED STATES DISTRICT JUDGE**